# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES SINES; MANUELA SINES and
JENNELL JONES, on behalf of themselves and
all others similarly situated,

      Plaintiffs,

vs.                                                                                          No. MC 21-0026 JB

DARLING INGREDIENTS, INC.,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Darling Industries Inc.'s Motion to Enforce Subpoena Served on Non-Party Dr. Mark P. Cal, filed July 27, 2021 (Doc. 1)("Motion"). The Court held a hearing on February 23, 2022. <u>See</u> Clerk's Minutes at 1, filed February 23, 2022 (Doc. 11). The primary issues are: (i) whether Dr. Mark P. Cal is the Plaintiffs James Sines, Manuela Sines, and Jennell Jones' expert; (ii) whether Dr. Cal must comply with Defendant Darling Ingredients, Inc.'s[1] subpoena, because discovery against a party's expert must proceed under rule 26 of the Federal Rules of Civil Procedure rather than under rule 45; and (iii) whether the Court should transfer the Motion to the United States District Court for the District of New Jersey. The Court concludes: (i) that Dr. Cal is the Plaintiffs' expert; (ii) that it will quash Darling Ingredients' subpoena, because the Plaintiffs' have standing to contest the subpoena and have a legitimate interest in ensuring that the parties follow the agreed-upon discovery schedule;

---

[1]The title of Darling Ingredients' motion refers to "Darling Industries Inc." Motion at 1. Darling Ingredients calls itself "Darling Ingredients" on its website. <u>See</u> Darling Ingredients, https://www.darlingii.com/ (last visited April 20, 2022).

and (iii) transfer to the District of New Jersey is not warranted.  Accordingly, the Court will deny

the Motion and grant the Plaintiffs' request to quash the subpoena.

## **FACTUAL BACKGROUND**

Darling Ingredients is a leading producer and developer of sustainable organic ingredients.

See Motion at 3.  One of Darling Ingredients' practices is to take materials that are headed for the

landfill and recycle them into sustainable ingredients.  See Motion at 3.  For example, Darling

Ingredients creates biofuel from restaurants' used cooking oils and turns animal byproducts into

gelatin that can then be used in pharmaceuticals.  See Motion at 3.  Darling Ingredients' facility in

Newark, New Jersey, recycles more than 100,000 metric tons of raw material each year.  See

Motion at 4.  Darling Ingredients owns and operates a facility in Newark's "heavily industrialized

waterfront and is surrounded by numerous industrial factories and other facilities that create and

emit odors."  Motion at 4.  In October, 2019, Plaintiffs James Sines, Manuela Sines, and Jennell

Jones sued Darling Ingredients in the United States District Court for the District of New Jersey.

See First Amended Class Action Complaint and Demand for Jury Trial ¶¶ 1-2, at 1, filed October

30, 2019, in CIV 19-19121-CCC-CLW (D.N.J.)(Doc. 2); Plaintiffs' Response to Opposition to

Defendant's Motion to Enforce Subpoena Served on Non-Party Dr. Mark P. Cal and Request to

Quash or Transfer Defendant's Motion to Trial Court at 3, filed August 17, 2021 (Doc.

5)("Response").  The Plaintiffs allege that Darling Ingredients' Newark facility emits "unbearable

noxious odors into the ambient air" that "invade the properties of the Plaintiffs and putative class."

Response at 3.  The Plaintiffs make claims for nuisance, negligence, gross negligence, and trespass.

See Response at 3.  The Plaintiffs seek both damages and injunctive relief.  See Response at 3.

## PROCEDURAL BACKGROUND

On April 16, 2021, the Honorable Claire C. Cecchi, United States District Judge for the United States District Court for the District of New Jersey, ordered the Plaintiffs and Darling Ingredients to submit a discovery plan, in accordance with rule 26(f) of the Federal Rules of Civil Procedure.  See Response at 3.  The parties submitted jointly their discovery plan on April 22, 2021.  See Discovery Plan, filed August 17, 2021 (Doc. 5-2)("Discovery Plan").  In their Discovery Plan, the parties agree that: (i) April 15, 2022, is the Plaintiffs' deadline for disclosing experts and producing expert reports; (ii) May 6, 2022, is Darling Ingredients' deadline to depose the Plaintiffs' experts; (iii) May 27, 2022, is Darling Ingredients' deadline for disclosing expert and producing expert reports; and (iv) June 17, 2022, is the Plaintiffs' deadline to depose Darling Ingredients' experts.  Discovery Plan at 2.

On April 30, 2021, the Plaintiffs made their introductory disclosures to Darling Ingredients in accordance with rule 26(a)(1) of the Federal Rules of Civil Procedure.  See Plaintiffs' Rule 26(a)(1) Initial Disclosures, filed July 27, 2021(Doc. 1-1)("Initial Disclosures"); Motion at 5.  In their Initial Disclosures, the Plaintiffs list Dr. Cal as an "Air Modeling/Air and Odor Dispersion Expert" who is "likely to have discoverable information that" the Plaintiffs may use "to support its claims or defenses."  Initial Disclosures at 3.  Before the April 15, 2022, deadline to disclose the Plaintiffs' experts and the May 5, 2022, deadline for Darling Ingredients to depose those experts, Darling Ingredients served a subpoena duces tecum on Dr. Cal, the Plaintiffs' anticipated -- but not yet retained -- expert, on either July 2, 2021, or July 3, 2021.[2]  See Motion at 5.  With

---

[2]The parties dispute when Dr. Cal was served with the subpoena.  See Motion at 2 (asserting that Darling Ingredients served Dr. Cal on July 2, 2021); Response at 6 (asserting that Dr. Cal was served on July 3, 2021).  Albert C. Garcia, the person who served the subpoena, received it on June 28, 2021, but indicates that he served it on July 2, 2021, see Subpoena to Produce Documents,

the subpoena, Darling Ingredients seeks three categories of "non-privileged, factual" documents: (i) "motive, bias, and credibility documents such as how much Plaintiffs' counsel has paid Dr. Cal"; (iii) Dr. Cal's articles, publications, and reports that relate to "odor and odor emissions"; and (iii) Dr. Cal's articles, publications, and reports that relate to the AERMOD dispersion model,[3] which Dr. Cal "has used in other cases for Plaintiffs' counsel and will use in this case."  Motion at 5 (emphasis removed).  Darling Ingredients does not use the subpoena to seek Dr. Cal's expert opinions.  See Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action at 8, filed July 27, 2021 (Doc. 1-2)("Subpoena").

Dr. Cal did not file any objections to the Subpoena, despite the July 14, 2021, deadline. See Subpoena at 1.  On July 19, 2021, the Plaintiffs objected to the Subpoena.  See Plaintiffs' Objections to Defendant's Subpoena of Non-Party Expert Dr. Mark Cal at 1, filed July 27, 2021 (Doc. 1-5)("Objections").   The Plaintiffs argue that Darling Ingredient's Subpoena contains "overwhelmingly irrelevant, non-proportional, and overbroad requests," and accuse Darling Ingredients of placing additional burdens and expenses on "the victims of its conduct."  Objections at 2.  According to the Plaintiffs, the Subpoena is an attempt to circumvent rule 26(b)(4) of the Federal Rules of Civil Procedure.   See Objections at 2.   The Plaintiffs assert that Darling Ingredients is not entitled to "irrelevant documents" from Dr. Cal, because "they are irrelevant and not proportional" to the case's needs.  Objections at 2.  In addition, the Plaintiffs contend that the

---

Information, or Objects or to Permit Inspection of Premises in a Civil Action at 3, filed July 27, 2021 (Doc. 1-3), whereas Dr. Cal and the Plaintiffs assert that Dr. Cal was not served until July 3, 2021, see Declaration of Dr. Mark Cal at 1, dated August 17, 2021, filed August 17, 2021 (Doc. 5-1).

[3]AERMOD is an "atmospheric dispersion modeling system" that incorporates meteorological and terrain data that is used to map air flow and pollution dispersion.  AERMOD, Wikipedia, https://en.wikipedia.org/wiki/AERMOD (last visited April 21, 2022).

Subpoena subverts the Discovery Plan, is overbroad, and places an undue burden on Dr. Cal and on the Plaintiffs. See Objections at 3. According to the Plaintiffs, many of the documents that Darling Ingredients requests are trial preparation materials are privileged, meaning that they are not subject to disclosure. See Objections at 5-6.

### 1.    **The Motion.**

Darling Ingredients asks the Court to enforce the Subpoena. See Motion at 1-2. Darling Ingredients asserts that Dr. Cal must comply, because he never objected to the Subpoena, and that the Plaintiffs' Objections are not timely and that therefore the Court must not considered it. See Motion at 2. Darling Ingredients argues that, although the Plaintiffs object to the Subpoena, the Plaintiffs were "not served until July 19, 2021," five days after the Subpoena's July 14, 2021, response deadline. Motion at 2. Darling Ingredients argue, therefore, that the Plaintiffs have waived their objections. See Motion at 2. Moreover, Darling Ingredients contends that, even if the Plaintiffs timely had objected, their Objections are unavailing, because they "provide no basis for Dr. Cal's complete refusal to produce any documents," given that it is "well settled [that] 'only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena.'" Motion at 2 (quoting Adesanya v. Novartis Pharms. Corp., No. CIV 13-5543 (SDW-SCM), 2015 WL 7574362, at *2 (D.N.J. November 24, 2015)(Mannion, M.J.)). Further, Darling Ingredients argues that, even if the Plaintiffs did not waive their Objections, and even if the Plaintiff can move to quash or modify the Subpoena, the Plaintiffs' Objections are nevertheless unavailing, because "'[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden,'" and because Darling Ingredients' Subpoena seeks only non-privileged documents. Motion at 3 (quoting Gov't Emps. Ins. Co. v. Trnovski, No. CIV 16-4662 (CCC), 2018 WL 528 1424, at *2 (D.N.J. October 23, 2018)(Clark, M.J.))

Darling Ingredients summarizes the documents that it seeks, see Motion at 5-13, then more fully explains its five arguments, see Motion at 13-21.  First, Darling Ingredients contends that Dr. Cal waives his Objections by not responding to the Subpoena by July 14, 2021.  See Motion at 13-14.  Second, Darling Ingredients asserts that the Plaintiffs' Objections fail, because they, too, missed the July 14, 2021, deadline, and because they lack standing to object to the Subpoena.  See Motion at 14-16.  Darling Ingredients contends that the Plaintiffs "cannot legitimately contend" that documents dealing with the Plaintiffs' law firm's payments to Dr. Cal's are privileged, and that, in any event, Darling Ingredients does not seek any privileged documents.  Motion at 15. Third, Darling Ingredients asserts that the Plaintiffs' Objections lack merit, because parties do not have standing to challenge subpoenas issued to nonparties on relevance grounds or undue burden grounds.  See Motion at 16-17.  Fourth, Darling Ingredients maintains that rule 45 is the proper vehicle to obtain Dr. Cal's documents.  See Motion at 17-21.  Fifth and finally, Darling Ingredients reasserts that they do not seek privileged documents: Darling Ingredients "expressly represents that it is not seeking privileged documents" and acknowledges that "such documents can be withheld."  Motion at 21.

2.    **The Response**.

The Plaintiffs respond to Darling Ingredients' Motion, accusing Darling Ingredients of abusing rule 45 and disregarding rule 26's "well-established expert discovery limitations." Response at 1.  In addition, the Plaintiffs contend that, by issuing a Subpoena to Dr. Cal, Darling Ingredients is attempting to circumvent the Discovery Plan.  See Response at 1.  The Plaintiffs ask the Court to quash the Subpoena pursuant to rule 45(d)(3)(A)(iv), because: (i) the Subpoena "provided an unreasonable time for response"; (ii) the Subpoena violates rule 45(d)(3)(B)(ii) by seeking information from an unretained expert; and (iii) the Subpoena "seeks information that

subjects Dr. Cal to undue burden and expense," for which Darling Ingredients is required to pay under rule 26(b)(4)(E)(i).  Response at 2.  The Plaintiffs argue that, if the Court grants Darling Ingredients' Motion, the Court must order Darling Ingredients to pay Dr. Cal a "reasonable fee" for the time it takes to respond to the Subpoena, in compliance with rule 26(b)(4)(E), because Dr. Cal is an expert.  Response at 2.  Finally, the Plaintiffs request that, if the Court grants the Motion or declines to quash the Subpoena, the Court transfer the Motion to the United States District Court for the District of New Jersey, so that court can consider the Motion instead.  See Response at 3.

According to the Plaintiffs, their response to the Subpoena was timely, because Dr. Cal received the Subpoena on July 3, 2021, and the Plaintiffs objected on his behalf on July 19, 2021, "the first business day after the 14-day deadline."  Response at 6 n.5.  The Plaintiffs argue that their objections are not untimely, because the Subpoena provides Dr. Cal with ten days to respond, "despite the fact that the subpoena requests essentially everything Dr. Cal has ever written regarding his area expertise, AERMOD, and every case in which he has ever provided evidence or testimony."  Response at 6.  According to the Plaintiffs, their Objections are timely "[a]ny way you slice it."  Response at 7.

The Plaintiffs respond that they have standing to challenge the Subpoena, because they assert a claim or privilege to the materials that the Subpoena seeks.  See Response at 8.  The Plaintiffs note that courts "'have routinely considered, without discussion of standing, a party's motion to quash subpoenas duces tecum addressed to that party's expert witnesses.'"  Response at 8 (quoting Smith v. Transducer Tech., Inc., No. CIV 1995/28, 2000 WL 1717334, at *1 (D.V.I. November 16, 2000)(Resnick, M.J.)).  The Plaintiffs contend that they have standing, because Darling Ingredients "sought to serve the subpoena on Dr. Cal through Plaintiffs' counsel," and because they have a "legitimate interest in ensuring that expert discovery is conducted in

accordance with the" Discovery Plan and rule 26.  Response at 8.  Moreover, the Plaintiffs assert that, despite Darling Ingredients' exhortations about not seeking privileged material, the Subpoena "remains the operative document" and still asks for privileged material.  Response at 9.

Next, the Plaintiffs maintain that their Objections are timely, because Darling Ingredients sought initially to serve the Subpoena on Dr. Cal through the Plaintiffs' counsel on June 24, 2021, and, when the Plaintiffs filed their Objections on July 19, 2021, the Plaintiffs were "under the reasonable belief that Dr. Cal had not been served with the subpoena until July 3, 2021."  Response at 10.  The Plaintiffs assert that, if July 14, 2021, is the Subpoena's compliance date, then Darling Ingredients violates rule 45's requirement to permit a "reasonable time" to comply with a Subpoena.  Response at 11.  According to the Plaintiffs, the Subpoena's deadline of eleven days after Dr. Cal's alleged date of being served is "inherently unreasonable."  Response at 11.

The Plaintiffs contend that the Court must quash the Subpoena, because Darling Ingredients cannot circumvent the Discovery Plan and rule 26 by seeking information through a Subpoena.  See Response at 11.  According to the Plaintiffs, rule 45 subpoenas are "'subject to the same discovery limitations as those set out in Rule 26.'"  Response at 11 (quoting Driscoll v. Castellanos, No. CIV 19-0527 JCH/KK, 2020 WL 7711869, at *2 (D.N.M. December 29, 2020)(Khalsa, M.J.)).  The Plaintiffs allege that, because the Subpoena violates rule 26, "established jurisprudence, and the discovery plan," the Court should not enforce it.  Response at 13.

The Plaintiffs argue that the Court should quash the Subpoena, because it prematurely subjects Dr. Cal to an undue burden and expense before he has been disclosed or retained as an expert.  See Response at 13.  The Plaintiffs allege that rule 45(d) requires a court to modify or quash a subpoena if it subjects someone to undue burden and expense.  See Response at 13 (citing

Driscoll v. Castellanos, 2020 WL 7711869, at *2).  The Plaintiffs note that Dr. Cal ultimately may not provide any testimony for them, let alone as an expert, but that, even if he is retained as an expert, his information is not subject to discovery, under the Discovery Plan, until under the Discovery Plan.  See Response at 13.  Moreover, according to the Plaintiffs, the Subpoena is overbroad, and Darling Ingredients does not explain why it needs Dr. Cal's information earlier than Darling Ingredients would be able to access it under the Discovery Plan.  See Response at 14. The Plaintiffs state that Dr. Cal estimates it will take forty hours to respond to the Subpoena and that the Plaintiffs "cannot be required to bear this extraordinary cost of this response."  Response at 14.  The Plaintiffs assert that the Subpoena and Darling Ingredients' Motion "have already been a significant waste of time and resources," and that the Court should deny the Motion or quash the Subpoena.  Response at 14.  In addition, the Plaintiffs maintain that, if the Court chooses to grant the Motion or chooses not to quash the Subpoena, it should transfer the Motion to the United States District Court for the District of New Jersey pursuant to rule 45(f), so the District of New Jersey, instead of the Court, can consider the Motion and Subpoena.  See Response at 14.

Finally, the Plaintiffs argue that, if the Court chooses to enforce any part of the Subpoena, Darling Ingredients must pay Dr. Cal a reasonable fee to respond to the Subpoena.  See Response at 14.  The Plaintiffs assert that the "most egregious flaw" with Darling Ingredients' Subpoena is seeking to shift the costs of discovery onto the Plaintiffs, who are the victims of Darling Ingredients' "noxious air pollution."  Response at 14.  According to the Plaintiffs, rule 26(b)(4)(A) requires Darling Ingredients to compensate reasonably Dr. Cal for his work responding to the Subpoena.  See Response at 14-15.  The Plaintiffs argue that Darling Ingredients "seeks incredibly expansive expert discovery," yet seeks to "pin the costs" of producing that discovery on the

Plaintiffs, and, therefore, that the Court must order Darling Ingredients to comply with rule 45 by compensating Dr. Cal under rule 26.  Response at 15.

     **3.**     **The Reply.**

     Darling Ingredients replies to the Plaintiffs, contending that the Plaintiffs do not provide a "legitimate answer" whether Dr. Cal waived his objections, and whether the Plaintiffs lack standing to object to the Subpoena on grounds other than privilege.  Darling Industries Inc. Reply in Support of its Motion to Enforce Subpoena Served on Non-Party Dr. Mark P. Cal at 1, filed August 20, 2021 (Doc. 6)("Reply").  Darling Ingredients argues that, even if the Plaintiffs have not waived their ability to object, and even if the Plaintiffs have standing to object, the Plaintiffs' Objections are "factually inaccurate and contrary to established law," so the Court nevertheless should grant the Motion.  Reply at 1.  According to Darling Ingredients, there are "numerous independent reasons" for the Court to grant its Motion.  Reply at 1.

     In its Reply, Darling Ingredients makes two arguments.  See Reply at 1-12.  First, Darling Ingredients contends that both Dr. Cal and the Plaintiffs have waived their objections by not filing objections by the Subpoena's July 14, 2021, deadline.  See Reply at 2-4.  Darling Ingredients maintains that Dr. Cal waved his objections by not responding to the Subpoena or to Darling Ingredients' Motion.  See Reply at 2-3.  According to Darling Ingredients, because Dr. Cal never filed a response to the Motion, Dr. Cal consents to the Court granting the Motion under D.N.M. LR-Civ. 7.2(a).  See Reply at 2.  In addition, Darling Ingredients asserts that the Plaintiffs also waived their objections as well, because they did not object by July 14, 2021, but rather waited until July 19, 2021, to object.  See Reply at 2-3 (citing City of St. Petersburg v. Total Containment, Inc., No. MISC. 07-0191, 2008 WL 1995298 (E.D. Pa. May 5, 2008)(Stengel, J.); and Creative Gifts, inc. v. UFO, 183 F.R.D. 568, 570-71 (D.N.M. 1998)(Hansen, J.)).

- 10 -

Second, Darling Ingredients maintains that the Plaintiffs' Objections lack merit.  See Reply at 4.  Darling Ingredients argues that the Plaintiffs lack standing to make objections on grounds other than privilege, because a party does not have standing to object to a subpoena served on a non-party.  See Reply at 4.  According to Darling Ingredients, the Plaintiffs' relevance objection fails, because the Plaintiffs lack standing to make that objection, and because the Plaintiffs' assertion that Dr. Cal is an unretained expert is a "disingenuous" attempt to avoid giving Darling Ingredients relevant discovery.  Reply at 5.  In addition, Darling Ingredients argues that the Plaintiffs' undue burden argument fails, because the Plaintiffs do not have standing to make that argument, and because there is insufficient evidence to conclude that complying with the Subpoena would place an undue burden on Dr. Cal.  See Reply at 6-7.

Darling Ingredients states that the Plaintiffs "ignore" that Darling Ingredients "first sent the Subpoena to Plaintiffs' counsel (who presumably forwarded it to Dr. Cal) on June 24, 2021," which is "twenty days before the deadline to respond," and that the Plaintiffs "ignore" that, under rule 45, a subpoena response deadline can be less than fourteen days.  Reply at 7.  Next, Darling Ingredients argues that the Court should not consider the Plaintiffs' argument that the Subpoena violates rule 45(d)(3)(B)(ii), because the Plaintiffs did not raise the argument before making it in their Response, and because the Plaintiffs' argument that Dr. Cal is not yet retained is "disingenuous."  Reply at 8.  In addition, Darling Ingredients contends that, even if Dr. Cal is an unretained expert, rule 45(d)(3)(B)(ii) does not apply, because its purpose is to prevent an unretained expert from having to do work to form an opinion on a matter they know nothing about, but Dr. Cal already knows this case and has "formed opinions" about it.  Reply at 9.  Next, Darling Ingredients argues that Dr. Cal is not entitled to any fees under rule 26(b)(4)(E), because Darling Ingredients seeks discovery under rule 45, not rule 26, and because rule 26(b)(4)(E) applies only

to discovery sought under rule 26(b)(4)(A) or (D).  <u>See</u> Reply at 10.  In addition, Darling Ingredients argues that they are not trying to subvert the Discovery Plan, and that, in any event, the Plaintiffs lack standing to challenge the Subpoena on this basis.  <u>See</u> Reply at 11-12.  Finally, Darling Ingredients' request that the Court transfer this case to the District of New Jersey is improper forum shopping, because the Plaintiffs' request is that, "if the Court does not agree with them, then plaintiffs want a new Judge."  Reply at 12.

### 4.   <u>The Hearing</u>.

The Court held a hearing on February 23, 2022.  <u>See</u> Clerk's Minutes, filed September 23, 2022 (Doc. 11).  The hearing began with Darling Ingredients offering the Court background on its Motion.   <u>See</u> Draft Transcript of Hearing at 4:1-4 (taken February 23, 2022)("Tr.")(Rossenwasser).[4]  After explaining the factual background, Darling Ingredients proceeded to note that the Plaintiffs identified Dr. Cal as "a person who has . . . knowledge related[d] to the case," and, as a result, Darling Ingredients seeks discovery from Dr. Cal.  Tr. at 5:6-7 (Rossenwasser).  Darling Ingredients argued that it served the Subpoena on Dr. Cal to learn what articles he has authored, whether he has taken consistent positions on odor dispersion in depositions, and how much he is being paid for his work.  <u>See</u> Tr. at 5:1-6:17 (Rossenwasser).

Next, Darling Ingredients explained what happened after they served Dr. Cal with the Subpoena.  <u>See</u> Tr. at 6:17-18 (Rossenwasser).  According to Darling Ingredients, Dr. Cal waived his objections to the Subpoena, because he did not respond by July 14, 2021.  <u>See</u> Tr. at 6:18-7:8 (Rossenwasser).  Moreover, Darling Ingredients asserted that Dr. Cal did not respond to their Motion either.  <u>See</u> Tr. at 7:8-15 (Rossenwasser).  Darling Ingredients argued that the lack of Dr.

---

[4]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Cal's response is sufficient reason for the Court to grant the Motion.  <u>See</u> Tr. at 7:12-22 (Rossenwasser).

Next, Darling Ingredients turned to the Plaintiffs' Objections, alleging that they, too, are waived, because they were filed on July 19, 2021, after the July 14, 2021, deadline.  <u>See</u> Tr. at 7:20-8:3 (Rossenwasser).  Darling Ingredients stated that the Plaintiffs contend that they first objected to the Subpoena on June 28, 2021, before the Subpoena was served on Dr. Cal and that "I don't know how you object to a subpoena before it is served."  Tr. at 8:4-5 (Rossenwasser). Darling Ingredients observed that the Plaintiffs are likely referring to an email that the Plaintiffs' attorney sent to Darling Ingredients' attorney noting that they object to the Subpoena after Darling Ingredients asked how they should serve Dr. Cal with the Subpoena.  <u>See</u> Tr. at 8:6-19 (Rossenwasser).  Darling Ingredients asserted that the Plaintiffs ignore rule 45, which contemplates explicitly a time to object that is shorter than fourteen days.  <u>See</u> Tr. at 8:24-9:17 (Rossenwasser).

Next, Darling Ingredients asserted that the Plaintiffs do not have standing to object on the basis of "burden or disproportionality," and that, even if the Plaintiffs do have standing, that the Court should nevertheless grant the Motion.  Tr. at 10:1-2 (Rossenwasser).  Darling Ingredients alleged that there is an "exception" to the rule that a party not served with a subpoena does not have standing to object to a subpoena: "when the challenging party assert[s] that it has a personal right or privilege with respect to the subpoenaed materials."  Tr. at 10:22-24 (Rossenwasser). Darling Ingredients argued that the exception does not apply, however, because the Plaintiffs waived their right to object, and because the Subpoena does not seek "information [to] which the plaintiffs have a personal right."  Tr. at 11:2-3 (Rossenwasser).  Darling Ingredients noted that the Plaintiffs are "people who own property in Newark[,] New Jersey," and do not have any rights or

privileges associated with Dr. Cal.  Tr. at 11:5 (Rossenwasser).  In addition, Darling Ingredients contended that Dr. Cal does not have any privilege relationship with the Plaintiffs' lawyers and that, even if they have a privilege relationship, "nothing in the rule says that that's an exception." Tr. at 11:10-11 (Rossenwasser).  Darling Ingredients argued that the Plaintiffs are "trying to have it both ways," given that they argue that Darling Ingredients is not entitled to Dr. Cal's information, because they have not yet retained Dr. Cal, but that they nevertheless have standing to challenge the Subpoena, "because he's their expert witness."  Tr. at 11:18-22 (Rossenwasser).

Darling Ingredients then turned to the Plaintiffs' contention that Darling Ingredients cannot use rule 45 to obtain information from Dr. Cal.  See Tr. at 12:19-21 (Rossenwasser).  Darling Ingredients argued that rule 45 is the appropriate mechanism, because the Plaintiffs waived their objections, and because other courts conclude that a rule 45 subpoena is an appropriate mechanism to seek discovery from non-parties, including a party's expert witness.  See Tr. at 12:21-13"1 (Rossenwasser).  According to Darling Ingredients, a scheduling order does not overcome rule 45, because a scheduling order "just sets back end deadlines" and does not mean "that was the only [day] you can get discovery."  Tr. at 13:16-18 (Rossenwasser).  Darling Ingredients then argued that rule 45(d)(3)(B) does not bar their Motion, because that rule prevents a party from getting free expert testimony and is designed to allow an expert to "bargain for the value of their services," and that, without the rule a subpoena would deny an expert that ability.  Tr. at 15:10 (Rossenwasser).  Finally, Darling Ingredients noted that the Plaintiffs maintain that, even if the Court enforces the Subpoena, Darling Ingredients must compensate Dr. Cal under rule 26(b)(4)(E), and Darling Ingredients argued that rule does not apply, because it involves time spent responding to discovery under rule 26(b)(4)(A) or (D), and because it "applies to a consulting non testifying expert," which "Dr. Cal is not."  Tr. at 16:6-7 (Rossenwasser).  Darling Ingredients explained that

it does not seek Dr. Cal's expert report with this Subpoena, and that it instead seeks materials "that we would not get through the normal disclosure process such as the articles[,] these white papers," as well as Dr. Cal's testimony in other cases and how much Dr. Cal is being paid.  Tr. at 16:14-16 (Rossenwasser).

The Court asked what the procedure would be if "you treat . . . the expert of another party as their agent."  Tr. at 16:21-23 (Court).  Darling Ingredients responded that it does not "know of any other way to get the information" other than by way of rule 45.  Tr. at 17:9-10 (Rossenwasaser).  The Court indicated that it is "a little bit concerned about the procedure here," because the Subpoena may be asking for privileged work product. Tr. at 17:20-21 (Court).  Darling Ingredients stated that "a lot of the information we're seeking is information that only Dr. Cal would have possession of."  Tr. at 18:3-5 (Rossenwasser).  The Court responded that it is not unusual for only the expert to have certain information, and that lawyers typically do not send subpoenas to everybody who may have information even if the lawyers do not have it.  See Tr. at 18:6-13 (Court).  Darling Ingredients states that it is concerned about the relationship that Dr. Cal has with the Plaintiffs and that Dr. Cal "has been doing this for a very long time."  Tr. at 18:20-21 (Rossenwasser).  The Court stated that it still has reservations about Darling Ingredients opting to pursue a third-party subpoena in this situation.  See Tr. at 19:8-13 (Court).  Darling Ingredients responded that it could have asked the Plaintiffs in a document request for the same documents that it seeks with this Subpoena.  See Tr. at 14-17 (Rossenwasser).  The Court observed that is a "different problem," because the "New Jersey Court can handle that discovery dispute" and noted that "[j]ust because you don't get what you want with discovery requests doesn't mean you get to start issuing subpoenas."  Tr. at 19:18-24 (Court).  The Court noted that would be an "end run around the discovery process" and stated that is not a "good justification for this method."  Tr. at

19:25-20:7 (Court).  Darling Ingredients argued that "this is the way the process is done."  Tr. at

21:8-9 (Rossenwasser).

      Next, the Plaintiffs began their argument by asserting that it is "absurd that there is an

argument here that we failed to make a timely objection."  Tr. at 22:6-8 (Robb).  According to the

Plaintiffs, when Darling Ingredients first presented them with the Subpoena, they "objected stating

we object to your repeated attempts to circumvent the established rules and procedures" by using

third-party subpoenas to "conduct tailgate expert discovery."  Tr. at 22:11-13 (Robb).  The

Plaintiffs contended that rule 26 had been overlooked in the argument so far and that rule 26

provides the "proper mechanisms by which to seek [expert] discovery."  Tr. at 22:24-25 (Robb).

The Plaintiffs stated that Dr. Cal has not been retained in this case, is not a fact witness, and has

received "no information from us regarding the subject matter of that complaint whatsoever."  Tr.

at 23:8-9 (Robb).

      The Court noted that the Plaintiffs list Dr. Cal in their initial disclosures and as a person

who has information, and that it seems that Dr. Cal is "fair game" for Darling Ingredients to "hit

with a subpoena" if Dr. Cal is a "true third party individual."  Tr. at 23: 13-16 (Court).  The

Plaintiffs stated that they do not suggest that they have no relationship with Dr. Cal and that they

anticipate that he will be designated as an expert in this case.  See Tr. at 23:23-24:2 (Robb).  The

Court requested that the Plaintiffs assume that Dr. Cal has been retained as the Plaintiffs' testifying

expert and asked how Darling Ingredients would get this requested information.  See Tr. at 24:3-

11 (Court).  The Plaintiffs responded that Darling Ingredients would get the information through

interrogatories and requests for production, and contended that, under the Discovery Plan, "we do

not have a deadline to disclose our experts until July 5 in this case," meaning that Darling

Ingredients can still issue discovery requests to the Plaintiffs.  Tr. at 24:13-15 (Robb).  Moreover,

the Plaintiffs argued, the Court should transfer the Motion to the District of New Jersey, because "that would be the most efficient way" to resolve the Motion.  Tr. at 25:5-7 (Robb).  The Plaintiffs maintained that they are not "hiding Dr. Cal," but that subpoenaing Dr. Cal "to produce his entire body of work without our ability to oversee the expert discovery process is just violative of the Federal Rules," specifically rule 26.  Tr. at 25:13-25 (Robb).  The Plaintiffs argued that Darling Ingredients is "going back door and trying to litigate this issue before you," which is "highly inappropriate."  Tr. at 25:24-25:1 (Robb).

The Court asked whether somebody has taken Dr. Cal's deposition or whether that was in a different case.  <u>See</u> Tr. at 26:13-15 (Court).  The Plaintiffs stated that "was in a Massachusetts state case," that Darling Ingredients is a "multinational corporation that engages in animal rendering,"[5] and that "we have . . . 3 ongoing lawsuits . . . across the country with this same defendant."  Tr. at 26:16-24 (Robb).  The Court asked what the Plaintiffs would do if Darling Ingredients asked them for a copy of every article that Dr. Cal has written.  <u>See</u> Tr. at 27:12-15 (Court).  The Plaintiffs responded that they would "have no problem with that," provided it is done through rule 26 and Dr. Cal is compensated under rule 26.  <u>See</u> Tr. at 27:19 (Robb).  The Plaintiffs asserted that rule 26 covers this situation.  <u>See</u> Tr. at 29:15-30:8 (Robb).  Moreover, the Plaintiffs noted that Dr. Cal consents to transferring the Motion to the District of New Jersey.  <u>See</u> Tr. at 31:7-17 (Robb).

The Court stated that how it rules on this case might depend on how the Plaintiffs characterize Dr. Cal.  <u>See</u> Tr. at 31:18-32:3 (Court).  The Plaintiffs responded that they "intend to

---

[5]Animal rendering is a "process that converts waste animal tissue into stable, usable materials" that involves simultaneously "dr[ying] the material and separate[ing] the fat from the bone and protein" by boiling or dehydrating.  Rendering (animal products), Wikipedia, https://en.wikipedia.org/wiki/Rendering_(animal_products) (last visited April 30, 2022).

designate Dr. Cal as an expert" and that their July 5, 2022, disclosures will reflect that designation. Tr. at 32:5-6 (Robb). Darling Ingredients argued that the Plaintiffs' response proves the Court's point, "which is as we sit here today [Dr. Cal] is not their agent." Tr. at 33:5-6 (Rossenwasser). The Court then indicated that it has written on a similar issue in United States v. 2121 Celeste Road SW, Albuquerque, N.M., 307 F.R.D. 572 (D.N.M. 2015)(Browning, J.). See Tr. at 37:19-38:7 (Court). The Court noted that, in United States v. 2121 Celeste Road SW, Albuquerque, N.M., 307 F.R.D. 572, it wrote that there is no express limitation on the persons who may be subject to rule 45 and that parties are not limited to rule 34 requests for production to obtain information from other parties. Tr. at 38:17-39:20 (Court)(quoting United States v. 2121 Celeste Road SW, Albuquerque, N.M., 307 F.R.D. at 588). The Plaintiffs asserted that, despite rule 45, rule 26 "specifically requires the party seeking expert discovery . . . to pay the cost of that effort." Tr. at 41:14-16 (Robb). The Court stated that it seems that Darling Ingredients likely will have to pay Dr. Cal for his work responding to the Subpoena, because "there [are] greater protections for people that are subpoenaed as a third party." Tr. at 42:6-8 (Court). The Plaintiffs responded that rule 26 supports that proposition. See Tr. at 42:20-25 (Court). Darling Ingredients reiterated its contention that rule 26 does not apply, because this discovery is not under rule 26, and that rule 45 applies instead. See Tr. at 43:5-16 (Court). The Court suggested that the parties negotiate and settle on an appropriate compensation rate for Dr. Cal. See Tr. at 43:17-25 (Court).

## **RELEVANT LAW REGARDING DISCOVERY**

Rule 34 of the Federal Rules of Civil Procedure governs discovery requests for documents. See Fed. R. Civ. P. 34. Rule 34(a) states:

A party may serve on any other party a request within the scope of Rule 26(b):

(1)    to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

     (A)    any designated documents or electronically stored information -- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations -- stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

     (B)    any designated tangible things; or

(2)    to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a).   Rule 26(b)(1) explains that the proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Federal courts have held that the scope of discovery under rule 26 is broad.  See Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").  The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result of this policy, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a

case." <u>Anaya v. CBS Broad., Inc.</u>, 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.)(internal quotations marks omitted).

    A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." <u>McGee v. Hayes</u>, 43 F. App'x 214, 217 (10th Cir. 2002)(unpublished).[6] "'Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" <u>Rivera v. DJO, LLC</u>, No. CIV 11-1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting <u>Tottenham v. Trans World Gaming Corp.</u>, No. CIV 00-7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)). <u>See</u> <u>Hardrick v. Legal Servs. Corp.</u>, 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs

---

    [6]<u>McGee v. Hayes</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that <u>McGee v. Hayes</u> has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93-5041 BMM, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted).

Rule 26(b)(1) was amended in 2000. Before the 2000 amendments, rule 26(b)(1) defined the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1)(1996). The 2000 amendments made the following changes, shown here in redline form with the deleted language stricken and the added material underlined:

> Parties may obtain discovery regarding any matter, not privileged, that ~~which~~ is relevant to ~~the subject matter involved in the pending actions, whether it relates to~~ the claim or defense of ~~the party seeking discovery or to the claim or defense of~~ any ~~other~~ party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant ~~The~~ information ~~sought~~ need not be admissible at the trial if discovery the ~~information sought~~ appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Putting aside the changes to the last sentence -- which the advisory committee's notes make clear was a housekeeping amendment to clarify that inadmissible evidence must still be relevant to be discoverable -- the 2000 amendments have two effects: (i) they narrow the substantive scope of discovery in the first sentence; and (ii) they inject courts into the process in the entirely new second sentence.

In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine the scope of discovery by deleting the "subject matter" language.  This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery.  Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language.  Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions.  Discovery and Disclosure Practice, supra, at 44-45 (1997).  The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways.  The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party.  The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause.  The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery.  The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery.  Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center.  See Discovery and Disclosure Practice, supra, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

**The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.**

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii). These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that

was contemplated.  See 8 Federal Practice & Procedure § 2008.1 at 121.  This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery.  Cf. Crawford-El v. Britton, 118 S. Ct. 1584, 1597 (1998)(quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

Fed. R. Civ. P. 26 advisory committee's notes (emphasis added).

One gets the impression from reading the advisory committee's notes that the amendment was not intended to exclude a delineable swath of material so much as it is intended to send a signal to district judges to become more hands-on in the process of regulating -- mostly limiting -- discovery on relevance grounds alone.  The "two effects" of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on the basis of relevance.  The change in substantive scope from "subject matter," to "claim or defense," would, therefore, seem to exist more to "add teeth" to the relevance standard than to effectuate a substantive narrowing.  It is not surprising that Congress would want to increase judicial presence: "relevance" is a wide-open concept even in the context of trial, see Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."), and it is often said that relevance for discovery is an even broader concept.  One might then say that old rule 26(b)(1)'s relevant discovery provision was toothless.  It is likewise unsurprising that the rulemakers are unable to articulate precise language narrowing the substantive scope of discovery: no single general rule can adequately take into account the infinite number of possible permutations of different claims, defenses, parties, attorneys, resources of parties and attorneys, information asymmetries, amounts in controversy, availabilities of information by other means, etc.  The determination requires the individualized judgment of

someone on the scene, and that presence is what the rulemakers wanted when they: (i) encouraged district judges to take a firmer grasp on the scope of discovery; and (ii) put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery.

Of course, courts should also seek to give substantive content to amendments.  Read literally, the rule does not permit parties to discover information relevant only to the claim or defense of another party; they must use discovery only to investigate their own claims and defenses.  More problematically, however, the rule may prevent using the Federal Rules' compulsory discovery process to obtain "background" information not specifically relevant to any one claim or defense -- e.g., a plaintiff naming a pharmaceutical company as a defendant and then using discovery to educate itself generally about medicine, biochemistry, and the drug industry by using the defendant's expertise.

In In re Cooper Tire & Rubber Co., 568 F.3d 1180 (10th Cir. 2009), the Tenth Circuit clarifies that the 2000 Amendments to rule 26 "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."  568 F.3d at 1188.  The Tenth Circuit further states that,

> when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action."  This good-cause standard is intended to be flexible.  When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be.  "[T]he actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

568 F.3d at 1188-89 (quoting the advisory committee's notes to the 2000 amendments to Fed. R.

Civ. P. 26(b)(1))(citations omitted)(footnote omitted)(alteration in original).

## LAW REGARDING RULE 26

Rule 26(a)(1) requires parties to make initial disclosures to the other parties:

> *In General.*   Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> > **(i)**      the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
> >
> > **(ii)**      a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
> >
> > **(iii)**      a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
> >
> > **(iv)**      for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A).  Rule 26(e) requires a party who has made a disclosure under rule

26(a) -- or who has responded to an interrogatory, request for production, or request for

admission -- to supplement or correct its disclosure or response in a timely manner if it learns that

the disclosure or response is incomplete or incorrect:

> (1)      *In General.*  A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for

admission -- must supplement or correct its disclosure or response:

(A)  in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B)  as ordered by the court.

Fed. R. Civ. P. 26(e).

Rule 37(c) provides the court with means to address failures to disclose:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56."  Fed. R. Civ. P. 37 advisory committee's note.  The Court may also sanction the party through other actions, including shifting fees, informing the jury of a party's failure to disclose, striking pleadings, or dismissing the action.  See Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); Fed. R. Civ. P. 37(c)(1)(A)-(C).

Whether a rule 26(a) violation is substantially justified or harmless is a question for the district court.  See Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d 170 F.3d 985, 993 (10th Cir. 1999)("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  (citing Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)).  The Tenth Circuit has directed district courts to consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony

would disrupt the trial; and (4) the moving party's bad faith or willfulness." Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d at 993.

The Court has concluded that an untimely disclosure prejudices an opposing party, that the prejudice is incurable, and that the untimely disclosure disrupts trial when the disclosure occurs close to trial, the party did not previously know of the information contained in the disclosure, and/or the opposing party does not have an opportunity to engage in further discovery or depositions. See, e.g., Leon v. FedEx Ground Package Sys., Inc., No. CIV 13-1005 JB/SCY, 2016 WL 1158079, at *12-14 (D.N.M. March 1, 2016)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672502, at *4-5 (D.N.M. Sept. 29, 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672373, at *12-14 (D.N.M. Sept. 24, 2009)(Browning, J.). For instance, in Leon v. FedEx Ground Package Systems, Inc., the Court concludes that, even though the Court deemed that there was no indication of bad faith or willfulness, the factors point against admitting expert testimony on additional statutory violations, because: (i) the testimony would surprise and prejudice the other party, because the expert could choose from many statutes on which to testify; (ii) the prejudice would be incurable, because the expert could explore any statutory violation so the opposing party could not prepare; (iii) the expert testimony would disrupt trial, because the last-minute testimony would force the opposing party to go on a fishing expedition on cross examination, and the Court would likely have to delay trial to allow the opposing party time to respond to the testimony; and (iv) there were no indications of bad faith or willfulness. See 2016 WL 1158079, at *12-14. Regarding the first element -- prejudice -- in Guidance Endodontics, LLC v. Dentsply International, Inc., the Court explains that a supplemental expert report disclosed soon before trial was prejudicial, because

> [t]he trial of a case is a substantial undertaking that consumes most or all of an attorney's time. Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful. There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions.

2009 WL 3672502, at *5. The Court notes that the defendants could not "prepare a new or existing expert witness," that the new expert report referenced "some recent research," of which the defendants were not informed, and this prejudice was incurable, because the trial had begun and the defendants were subject to a preliminary injunction, and that the defendants did not want to delay the trial and remain subject to the preliminary injunction. 2009 WL 3672502, at *5. The Court exclude the expert even though the Court found no evidence of bad faith or willfulness. See 2009 WL 3672502, at *5. In Guidance Endodontics, LLC v. Dentsply International, Inc., the Court concludes that: (i) the defendants were prejudiced and surprised when a supplemental report increased the damages estimate "from $1.2 million to $75.2 million," and the plaintiff had previously not disclosed the measure of damages it would seek; and (ii) the prejudice was incurable, because the defendants could not "re-depose [expert] McDonald and find a new rebuttal expert this late in the game when Guidance could have, with due diligence, disclosed this measure of damages during the discovery period." 2009 WL 3672373, at *12. The Court further notes that the trial would be disrupted, because the defendants did not know the plaintiff would seek such damages and had no rebuttal expert to the expert. See 2009 WL 3672373, at *14. See also Lewis v. Goldsberry, No. CIV 11-0283 JB/ACT, 2012 WL 681800, at *10 (D.N.M. Feb. 27, 2012)(Browning, J.)(concluding that a failure to disclose was not harmless where the plaintiff missed the disclosure deadline, "the Defendants [were] unable to ascertain to what each of Lewis' expert witnesses will testify or obtain their own experts to address that testimony," and without such information, deposing the experts would be futile).

When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted. See, e.g., Coffey v. United States, No. CIV 08-0588 JB/LFG, 2012 WL 2175747, at *12-13 (D.N.M. 2012)(Browning, J.); Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JB/WDS, 2010 WL 611141, at *3 (D.N.M. Jan. 31, 2010)(Browning, J.); Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp., No. CIV-06-1165 JB/DJS, 2007 WL 4707080, at *4 (D.N.M. Aug. 14, 2007)(Browning, J.). For example, in reviewing the factors in Coffey v. United States, the Court concludes that, where the plaintiff filed an amended report: (i) there was "little or no prejudice or surprise," because the United States had approximately ten months to find an expert to testify on conduct at the Gallup Indian Medical Center if it needed; (ii) the prejudice was curable, because the United States had the amended report when it deposed the expert, the United States was on notice of the report's opinions, and the United States could have sought relief by contacting the other party or the Court; (iii) the trial would not be disrupted, because the United States had the report for around ten months and could find additional witnesses; and (iv) there was no evidence of bad faith or willfulness. 2012 WL 2175747, at *12-13. In Wheeler Peak, LLC v. L.C.I.2, Inc., the Court concludes that a party suffered little prejudice from an expert report that:

> (i) was not signed, (ii) does not contain a complete statement of the basis of his opinions, and does not properly identify the facts, documents, or testimony upon which he relied; (iii) does not identify any summarizing exhibits to be used at trial; and (iv) does not provide his curriculum vitae, or his qualifications, publications, or testimony, all of which rule 26 requires.

2010 WL 611141, at *3. The Court reasoned that:

> (i) Hicks has since provided a signed report; (ii) Wheeler Peak made the two boxes of materials upon which Hicks relied available to [defendant] de la Torre at Hicks' deposition, and can make those materials available again if de la Torre wants to

<u>see</u> them; (iii) Hicks produced his cv on June 22, 2009; and (iv) while Hicks submitted his second report about a month and a half after the deadline in the Court's Scheduling Order, de la Torre had Hicks' second report for almost seven months before Hicks' deposition.

2010 WL 611141, at *3 (citations to transcript omitted).  <u>See</u> <u>Gulfstream Worldwide Realty, Inc.</u> <u>v. Philips Elecs. N. Am. Corp.</u>, 2007 WL 4707080, at *4 (concluding that Gulfstream Realty did not suffer prejudice where Philips Electronics provided the report in an untimely manner but Gulfstream Realty was aware of the information in the report seven weeks before the discovery deadline and before deposing the expert, Gulfstream Realty received the report three weeks before the discovery deadline, and the expert report, which was provided four months before trial, would not disrupt trial).

## <u>LAW REGARDING RULE 45</u>

"Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45." <u>Myers v. Andzel</u>, No. CIV 06-14420 RWS, 2007 WL 3256879, at *1 (S.D.N.Y. 2007)(Sweet, J.). <u>See</u>, <u>e.g.</u>, <u>Highland Tank & Mfg. Co. v. PS Int'l, Inc.</u>, 227 F.R.D. 374, 379 (W.D. Pa. 2005)(Gibson, J.)("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."); <u>Blazek v. Capital Recovery Assocs., Inc.</u>, 222 F.R.D. 360, 361 (E.D. Wis. 2004)(Adelman, J.)("[A]ny person may be required to produce documents and any property may be inspected. . . .  If the person is not a party to the litigation, the party seeking such discovery must utilize a subpoena to compel such discovery.").  Accordingly, courts have denied motions to compel non-parties to produce information where the moving party did not first attempt to subpoena the information that it sought to compel.  In <u>Harco National Insurance Co. v. Sleegers</u> <u>Engineering, Inc.</u>, No. CIV 06-11314 TLL, 2014 WL 5421237 (E.D. Mich. Oct. 22, 2014), for example, the Honorable Thomas L. Ludington, United States District Judge for the Eastern District

of Michigan, denied the plaintiff's motion to compel a former defendant to produce information

because the plaintiff never subpoenaed the information that it sought to compel.  See 2014 WL

5421237, at *4.  Judge Ludington states:

> By the terms of Rule 45, a party seeking discovery from a non-party must serve that
> non-party with a subpoena.  Here, there is no evidence that [the plaintiff] served a
> subpoena on [the former defendant], nor does [the former defendant] make any
> representations that it did so.  Because [the plaintiff] has not complied with the first
> step of seeking discovery from a non-party, its motion to compel will be denied.

2014 WL 5421237, at *4.  Cf. Smith v. Fla. Dep't of Corr., 369 F. App'x 36, 38 (11th Cir.

2010)(holding that the district court did not abuse its discretion when it denied the plaintiff's

motion to compel a non-party to produce information without validly serving the non-party with a

subpoena).

    Rule 45 was amended on December 1, 2013 in two significant ways.  First, revised rule

45(a)(2) provides that subpoenas are issued by the court in which the action is pending, rather than

by the court where compliance is sought.  Accordingly, the issuing court will always be the trial

court and parties no longer have to serve subpoenas from the district in which the information or

witnesses sought are located.  See Fed. R. Civ. P. 45(a)(2) (providing that subpoenas "must issue

from the court where the action is pending").  In line with the broadened authority that rule 45(a)(2)

establishes for the trial court, amended rule 45(b)(2) establishes nationwide service of process --

eliminating the previous discrepancy between federal service of process rules in criminal and civil

cases.  See Fed. R. Civ. P. 45(b)(2) (providing for the service of a subpoena "at any place within

the United States").

    Second, revised rule 45(d)(3) provides that motions to quash or enforce a subpoena can be

brought in the district where compliance is required -- i.e., the district in which the subpoena's

recipient resides or works -- rather than the issuing court -- i.e., the trial court.  See Fed. R. Civ. P.

45(d)(3).  The new rule 45(f), however, authorizes the enforcement court where compliance is

required to transfer a motion to quash or enforce a subpoena back to the trial court that issued the

subpoena in two limited instances: (i) if the person subject to the subpoena consents to the transfer;

or (ii) "if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  The advisory

committee notes provide some guidance as to when a court may find exceptional circumstances:

> The prime concern should be avoiding burdens on local nonparties subject
> to subpoenas, and it should not be assumed that the issuing court is in a superior
> position to resolve subpoena-related motions. In some circumstances, however,
> transfer may be warranted in order to avoid disrupting the issuing court's
> management of the underlying litigation, as when that court has already ruled on
> issues presented by the motion or the same issues are likely to arise in discovery in
> many districts.  Transfer is appropriate only if such interests outweigh the interests
> of the nonparty served with the subpoena in obtaining local resolution of the
> motion.

Fed. R. Civ. P. 45 advisory committee's note to the December 1, 2013, amendments.

In some situations, an expert witness is a party's agent and should not be subject to a non-

party subpoena.  An expert is a party's agent if the expert's is "subject to the control of the party"

who hires the expert.  Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3d Cir. 1995).  See Rawers

v. United States, 488 F. Supp. 3d 1059, 1084 n.29 (D.N.M. 2020)(Browning, J.).  An expert can

act as a party's agent when the expert testifies to his or her expert report's contents but retaining

an expert to create a report is not sufficient to treat the expert as the party's agent.  See Rawers v.

United States, No. CIV 10-0034 JB/CG, 2020 WL 8365782, at *6 n.28 (D.N.M. Aug. 7,

2020)(Browning, J.) (citing In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1016 (9th Cir.

2008)); Lizotte v. Praxair, Inc., 640 F. Supp. 2d 1335, 1339 (W.D. Wash. 2009)(Lansick, J.)).  By

itself, retaining an expert "to create a report is not enough to convert the expert's opinion into the

party's own."  Rawers v. United States, 2020 WL 8365782, at *6 n.28 (citing Whole Foods Mkt.

Grp., Inc. v. Wical Ltd. P'ship, No. CIV 17-1079-RCL, 2019 WL 6910168, at *3 (D.D.C. Oct. 22,

2019)(Lamberth, J.)).  "When an expert gives formal opinions, and the proponent lists the expert as a witness and produces the expert report, that party is signaling that opinion is the proponent's position."  Rawers v. United States, 488 F. Supp. 3d at 1084 n.29.  A testifying expert, therefore, "acts as an agent of a proponent, because the proponents means the Court and the opposing party to rely on the expert's [opinions] as the proponent's own" and because "the proponent is adopting the positions detailed in the expert's report."  Rawers v. United States, 488 F. Supp. 3d at 1084 n.29.  Nevertheless, merely retaining an expert to create a report is not sufficient to treat the expert as the party's agent.   See Rawers v. United States, 2020 WL 8365782, at *6 n.28 (citing In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1016 (9th Cir. 2008)); Lizotte v. Praxair, Inc., 640 F. Supp. 2d 1335, 1339 (W.D. Wash. 2009)(Lansick, J.)).

## LAW REGARDING QUASHING SUBPOENAS

"A court may quash or modify a subpoena pursuant to rule 45(c)."  Morales v. E.D. Etnyre & Co., 228 F.R.D. 694, 696 (D.N.M. 2005)(Browning, J)(citing Fed. R. Civ. P. 45(c)).  Rule 45(d)(3)(A)(iv) states that the Court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Furthermore, rule 45(c)(3)(B) states that a court "may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B).  "The party . . . moving to quash a subpoena has the burden to demonstrate good cause and/or privilege to be protected."  Morales v. E.D. Etnyre & Co., 228 F.R.D. at 696.  See Sentry v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996)(Rushfelt, M.J.)("[A] party seeking a protective order also has the burden to show good cause for it.").  Generally, "only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena."  Beach v. City of Olathe, Kansas, No. 99-2217GTV, 2001 WL 1098032, at *1 (D. Kan. Sept. 17,

2001)(Waxse, M.J.)(citing <u>Hertenstein v. Kimberly Home Health Care, Inc.</u>, 189 F.R.D. 620, 635 (D. Kan. 1999)(Rushfelt, M.J.)).  Moreover, "[a]bsent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty."  <u>Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.</u>, No. CIV 03-1185 JB/LFG, 2007 WL 2296916, at *1 (D.N.M. June 26, 2007)(Browning, J.)(quoting <u>Donahoo v. Ohio Dep't of Youth Servs.</u>, 211 F.R.D. 303, 306 (N.D. Ohio 2002)).  "The exception to this rule is that 'a party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.'"  <u>Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.</u>, 2007 WL 2296916, at *1 (quoting <u>United States v. Raineri</u>, 670 F.2d 702, 712 (7th Cir. 1982)).

<u>**ANALYSIS**</u>

Darling Ingredients asks the Court to enforce the Subpoena, <u>see</u> Motion at 1-22, but the Plaintiffs ask the Court to quash the Subpoena, because it violates rule 45, subjects Dr. Cal to undue burden and expense, and is an attempt to subvert rule 26 and the Discovery Plan, <u>see</u> Response at 2.  First, Dr. Cal is the Plaintiffs' expert.  Second, the Court will quash the Subpoena, because discovery against a party's expert must proceed under rule 26 and not under rule 45.  Third, transfer to the District of New Jersey is not warranted, because the Plaintiffs do not show that there are exceptional circumstances warranting transfer.  Accordingly, the Court will deny the Motion.

**I.      <u>DR. CAL IS THE PLAINTIFF'S EXPERT</u>.**

First, the parties dispute whether Dr. Cal is the Plaintiffs' expert.  <u>See</u> Response at 1; Reply at 5.  In their Initial Disclosures, the Plaintiffs state that Dr. Cal is an "Air Modeling/Air and Odor Dispersion Expert" and is a person who "may be called to testify for the Plaintiffs and the putative class in this action."  Initial Disclosures at 3.  The Plaintiffs contend that Dr. Cal is their

"anticipated (but currently unretained) air modeling expert."  Response at 1.  The Discovery Plan

provides that the Plaintiffs shall disclose their expert or experts by April 15, 2022, so the Plaintiffs

initially concluded that they had not yet retained Dr. Cal.  See Discovery Plan at 2.  Darling

Ingredients responds that this argument is, "at best, disingenuous."  Reply at 5.  At the hearing, the

Plaintiffs admit that, for the purposes of making its decision, the Court can "treat [Dr. Cal] as

. . . our expert that we intend to retain and pay."  Tr. at 32:18-20 (Robb).  While the Plaintiffs did

not have to disclose Dr. Cal until April 15, 2022, once they disclosed him as an expert, he became

their expert and should be treated as their expert.  Dr. Cal is the Plaintiffs' expert witness, despite

that Darling Ingredients filed their Motion before the Discovery Plan's April 15, 2022, deadline

for the Plaintiffs to disclosure their experts.  See Discovery Plan at 2.  There is every reason to

believe that Dr. Cal is the Plaintiffs' expert, and the Plaintiffs cannot avoid discovery by asserting

that Dr. Cal is their "anticipated" expert.  Response at 1.  The Plaintiffs cannot have it both ways.

Accordingly, the Court concludes that Dr. Cal is the Plaintiffs' expert.

## II.   DISCOVERY AGAINST A PARTY'S EXPERT MUST PROCEED UNDER RULE 26 RATHER THAN UNDER RULE 45.

Second, the Court will deny the Motion and quash the Subpoena, because discovery against

a party's expert must proceed under rule 26, and not under rule 45.  Rule 26 provides the following

about disclosure of an expert and discovery about an expert:

> (2)   Disclosure of Expert Testimony.
>
> (A)   In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> (B)   Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the

witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

(C)     Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i)     the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii)    a summary of the facts and opinions to which the witness is expected to testify.

(C)     Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i)     at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii)    if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(D)     Supplementing the Disclosure. The parties must supplement these disclosures when required under Rule 26(e).

. . . .

(4)     Trial Preparation: Experts.

(A)     Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial.  If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B)     Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C)     Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.  Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i)     relate to compensation for the expert's study or testimony;

(ii)     identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii)     identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D)     Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i)     as provided in Rule 35(b); or

> > > (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.
>
> > (E) Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:
>
> > > (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and
>
> > > (ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

Fed. R. Civ. P. 26(a).

The Supreme Court of the United States of America and the Court have both indicated that the Federal Rules of Civil Procedure should be construed as the courts construe statutes: using the rules of statutory construction.  See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168 (1993)(applying a canon of construction to the Federal Rules of Civil Procedure); Archuleta v. Taos Living Ctr., No. CIV 10-1150 JB/ACT, 2011 WL 6013057, at *6 (D.N.M. Dec. 1, 2011)(Browning, J.)("The rules of statutory construction apply to the Federal Rules of Civil Procedure.").  "The goal of statutory interpretation is to 'ascertain the congressional intent and give effect to the legislative will.'"  In re Taylor, 899 F.3d 1126, 1129 (10th Cir. 2018)(quoting Ribas v. Mukasey, 545 F.3d 922, 929 (10th Cir. 2008)).  It is a rule of statutory construction that, when Congress has established an elaborate framework for a subject, it intends that scheme to govern a situation rather than a less developed remedy.  See Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)(stating that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand").  "The goal of statutory interpretation is to 'ascertain the congressional intent and give effect to the legislative will.'"  In re Taylor, 899 F.3d 1126, 1129

(10th Cir. 2018)(quoting <u>Ribas v. Mukasey</u>, 545 F.3d 922, 929 (10th Cir. 2008)).  In other words, courts may not short circuit the elaborate framework with less robust frameworks.

In this case, rule 26(a)(2), not rule 45, is the appropriate path to pursue discovery of an expert.  There are sound reasons for a party to proceed under rule 26.  First, experts are an important and often central part of modern federal commercial litigation.  Rule 26 keeps expert litigation concentrated in the court with the case and not scattered across the nation's other districts.  Second, the court with the case is in the best position to determine the adversity of the discovery, i.e., proportionality.  In other words, the court with the case is in a better position to determine if this broad ranging expert discovery be allowed or cabined closer to what rule 26 expressly provides.  Therefore, rule 26 avoids the myriad issues that the Motion raises, such as standing and payment.

A court "retains discretion to decline to compel production of requested documents when the request exceeds the bounds of fair discovery, even if a timely objection has not been made." <u>Sines v. Kessler</u>, 325 F.R.D. 563, 567 (E.D. La. 2018)(Wilkinson, Jr., M.J.)(citing <u>Schooler v. Wal-Mart Stores, Inc.</u>, No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015)(Wilkinson, Jr., M.J.)).   Subpoenas are discovery devices "governed by Rule 45," but are "subject to the parameters established by Rule 26."  <u>Nugent v. Scott Fetzer Co.</u>, No. CIV 19-14759, 2020 WL 1322268, at *7 (E.D. La. Mar. 20, 2020)(Roby, M.J.)).   Nevertheless, a party does not have standing to object to a subpoena served on someone who is not a party to the action, including on relevance and undue burden grounds, unless the party objects on the basis of some personal right or privilege to the material sought, or if the subpoena infringes on the party's legitimate interests. <u>See</u> <u>United States v. Llanez-Garcia</u>, 735 F.3d 483, 498-99 (6th Cir. 2013); <u>United States v. Raineri</u>, 670 F.2d 702, 712 (7th Cir. 1982); <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir. 1975); <u>Est. of Ungar v. Palestinian Auth.</u>, 400 F. Supp. 2d 541, 554 (S.D.N.Y.

2005), aff'd, 332 F. App'x 643 (2d Cir. 2009); Todd v. RWI Acquisition LLC, No. CIV 12-0114 MCA/GBW, 2012 WL 13013069, at *2 (D.N.M. Sept. 18, 2012)(Wormuth, M.J.); Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 590 (D. Kan. 2003)(Rushfelt, M.J.); 9A Charles Alan Wright and Arthur Miller, Federal Practice and Procedure, § 2459 (3d ed. 2022). Discovery of non-parties "'must be conducted by subpoena pursuant to'" rule 45. United States v. 2121 Celeste Road SW, Albuquerque, N.M., 307 F.R.D. 572, 586 (D.N.M. 2015)(Browning, J.)(quoting Myers v. Andzel, No. CIV 06-14420 RWS, 2007 WL 3256879, at *1 (S.D.N.Y. 2007)(Sweet, J.)). Legitimate interests that give rise to standing to move to quash a subpoena include "avoiding undue lengthening of a trial, preventing undue harassment of a witness, and preventing prejudicial overemphasis on a particular witness's credibility." United States v. Ortiz, No. C 12-00119 SI, 2013 WL 6842559, at *2 (N.D. Cal. Dec. 27, 2013)(Illston, J.).

While the early disclosures of the expert here creates some interesting statutory and alternate issues under rule 45, in the District of New Mexico, the deadlines for disclosure of experts and disclosure of expert reports are the same; the Court also cautions the parties that, while the experts do not have to be deposed that day, they need to be ready to be deposed, because the deadlines are tight at the end of the case as the opposing party has to disclose its expert or experts, and all discovery comes to an end. Hence, in most cases, when the party offers the expert report, the Court treats the expert as the proponent's agent. The proponent of the expert, therefore, has standing to argue to quash a subpoena served on its agent. Using rule 45's general rules clause and treating an expert as a non-party overcomplicates matters and forces the parties and the court and parties to create fictions.

Here, Darling Ingredients serves the Subpoena on Dr. Cal. See Subpoena at 1. Dr. Cal is not a party to this lawsuit and does not object to the Subpoena. On July 19, 2021, in the United

States District Court for the District of New Jersey, the Plaintiffs object, but after the July 14, 2021,

deadline that the Subpoena sets for Dr. Cal to comply.  See Objections at 1.  On August 17, 2021,

however, the Plaintiffs asked the Court to quash the Subpoena.[7]  See Response at 1-2.  Whether

the Plaintiffs' Objections are timely, therefore, is not the issue.  Rather, because Darling

Ingredients asks the Court, not Judge Cecchi in the District of New Jersey, to enforce the

Subpoena, the question is whether the Plaintiffs have standing to ask the Court to quash the

Subpoena.

    The Plaintiffs have standing to ask the Court to quash the Subpoena.  First, the Plaintiffs

have standing to object on privilege and work-product grounds.  See United States v. Llanez-

Garcia, 735 F.3d at 498-99; Todd v. RWI Acquisition LLC, 2012 WL 13013069, at *2.  The

Plaintiffs argue that the Subpoena requests "information which Plaintiffs and/or Plaintiffs' counsel

have a claim and privilege upon, and a legitimate interest in, because the information is sought

from their anticipated expert."  Response at 2.  Rule 45 requires a person moving to quash a

subpoena under the claim of privilege to "describe the nature of the withheld documents,

communications, or tangible things in a manner that, without revealing information itself

privileged or protected, will enable the parties to assess the claim."  See Fed. R. Civ. P.

45(e)(2)(A).  According to the Plaintiffs, the Subpoena's requests for documents that Dr. Cal has

authored either alone or with others (a) relating to studies, modeling, or analyses or odors and/or

odor emissions, such as expert reports, (b) relating to the release of odor or other emissions from

---

[7]D.N.M. LR-Civ 7.4(a) imposes a fourteen-day deadline on filing responses to motions.
See D.N.M. LR-Civ 7.4(a).  On August 10, 2021, the Court extended the deadline and gave the
Plaintiffs until August 17, 2021, to respond.  See Order Granting Extension of Time for Plaintiffs
to Respond to Defendant's Motion to Enforce Subpoena, filed August 27, 2021 (Doc. 8).  The
Plaintiffs' Response, therefore, is timely.

a rendering plant, or (c) referring to and/or relating to odors or odor emissions, ask for privileged

information.[8]  See Response at 9-10.

The Plaintiffs ask the Court to quash the Subpoena, because Darling Ingredients "attempts

to circumvent the well-established process for expert discovery, which is governed by Rule 26,"

and because Darling Ingredients it attempting to subvert the Discovery Plan.  Response at 1.  A

party has standing to challenge a non-party subpoena if the subpoena infringes on the party's

---

[8]The Plaintiffs do not explain, however, why these materials are privileged.  Each of the Plaintiffs' specific privilege objections are for materials that Dr. Cal has authored "alone or with others."  Subpoena at 6-8.  See Response at 9-10.  It is not clear why the Plaintiffs' privilege would extend to "[a]ll" of Dr. Cal's documents.  Subpoena at 1.  There is no privilege log, as the law requires when a party asserts privilege.  See In re Grand Jury Subpoena, 274 F.3d 563. 575-76 (1st Cir. 2001).  Without a more robust factual record on which to assess the strength of the Plaintiffs' privilege and work-product claims, the Court cannot conclude that the Subpoena seeks privileged information.  See Texas Brine Co., LLV and Occidental Chemical Corp., 749 F.3d 1224, 1229 (10th Cir. 2018)("Assessing a claim of attorney-client privilege, or even a claim of work product doctrine, when a person withholds subpoenaed information, . . . necessarily requires a sufficient factual record."); XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *20 (D.N.M. April 1, 2016)(Browning, J.)(noting that the party moving the quash the subpoena bears the burden to demonstrate good cause or privilege).  Further, the Plaintiffs contend that the Subpoena seeks privileged material, because "Dr. Cal has neither been retained in the case nor conducted any study or evaluation of the underlying facts of the case, including an expert report."  Response at 10.  Despite this assertion, the Plaintiffs maintain that the Subpoena's requests for documents that Dr. Cal has authored "alone or with others," are subject to attorney-client privilege or the work-product doctrine.  Subpoena at 7.  See Response at 9-10.  By the Plaintiffs' own assertion, however, none of these documents relate to this case's underlying facts, and presumably either Dr. Cal alone or Dr. Cal and people unaffiliated with this case have authored these documents.

Moreover, the Subpoena notes that, at least to the extent it seeks correspondence between Dr. Cal and Liddle & Dubin, the Plaintiffs' law firm, it requests "non-privileged documents."  Subpoena at 3.  Finally, Darling Ingredients states explicitly that it does not seek privileged material from Dr. Cal.  See Motion at 3, 5, 21.  Although the Plaintiffs note correctly that the Subpoena remains "the operative document," there is not a sufficient basis to conclude that the Subpoena seeks privileged material, especially given that the Plaintiffs do not explain how the Subpoena's requests for Dr. Cal's research invoke privileged material.  Response at 10.  Although Dr. Cal must keep a privilege log to ensure that he does not produce privileged material or work product in response to the Subpoena, the Court will not modify or quash the Subpoena on privilege grounds.

legitimate interests.  See XTO Energy, Inc. v. ATD, LLC, 2016 WL 1730171, at *20; United States v. Raineri, 670 F.2d at 712.  The Plaintiffs argue that they have a "legitimate interest in ensuring that expert discovery is conducted in accordance with the" Discovery Plan and rule 26.  Response at 8.  The Plaintiffs are correct.  An expert witness is "ordinarily not the proper object of a subpoena." Res. Invs., Inc. v. U.S., 93 Fed. Cl. 373, 383 (Fed. Cl. 2010).  Although a subpoena is a discovery device that rule 45 governs, subpoenas cannot be used to subvert rule 26 or any other rule.  See Sines v. Kessler, 325 F.R.D. at 567.  Here, the parties agreed to a discovery schedule.  See Discovery Plan at 1.  Nevertheless, Darling Ingredients attempts to accelerate the schedule and require Dr. Cal to produce materials, some of which Darling Ingredients likely could find on its own.  If a party can use rule 45 to procure documents and other materials from an opposing party's expert before the agreed-upon deadline, then a discovery plan would not be controlling and rule 45 would risk displacing rule 26.  The Plaintiffs have a legitimate interest in all parties following the Discovery Plan.  Accordingly, the Court will exercise its "'broad discretion over the control of discovery'" to quash the Subpoena.  S.E.C. v. Merrill Scott & Assocs., Ltd., 600 F.3d 1262, 1271 (10th Cir. 2010)(quoting Cummings v. Gen. Motors Corp., 365 F.3d 944, 952 (10th Cir. 2004)).  See Stone v. High Mountain Mining Co., LLC, No. CIV 19-1246-WJM-STV, 2022 WL 1183724, at *2 (D. Colo. April 21, 2022)(Martinez, J.)(noting that one of rule 45's purposes is to "protect experts from being required to provide expert advice or assistance without proper compensation"); Fed. R. Civ. P. 45 advisory committee's notes (1991)(noting that rule 45 is not designed to compel unwilling experts to give evidence, especially without the ability to bargain for their services' value).

III.     <u>**TRANSFER TO THE DISTRICT OF NEW JERSEY IS NOT WARRANTED**</u>.

The Plaintiffs ask the Court to transfer Darling Ingredients' Motion to the District of New Jersey for consideration if the Court "is unwilling to dismiss" the Motion.  Response at 3.  A court may transfer a motion seeking compliance with a subpoena "if the person subject to the subpoena consents" or "if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  Exceptional circumstances under rule 45(f) include "avoiding burdens on local nonparties subject to subpoenas" and avoiding "disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 advisory committee's note to the December 1, 2013, amendments.  "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45 advisory committee's note to the December 1, 2013, amendments.  The proponent of transfer bears the burden to show exceptional circumstances.  <u>See</u> Fed. R. Civ. P. 45 advisory committee's note to the December 1, 2013, amendments.

Here, Dr. Cal consents to the Court transferring the Motion to the District of New Jersey.  <u>See</u> Dr. Cal Declaration ¶ 9, at 2.  Nevertheless, the Plaintiffs do not meet their burden to show that are there are exceptional circumstances warranting transfer.  The extent of the Plaintiffs' transfer argument is that the District of New Jersey should manage its own cases, <u>see</u> Response at 9, and that the Court should transfer the Motion if the Court declines to dismiss Darling Ingredients' Motion, <u>see</u> Response at 14.  As Darling Ingredients observes correctly, the Plaintiffs' transfer argument is contingent on the Court's decision -- if the Court denies the Motion, then the Court should not transfer the Motion; if the Court is not willing to deny the Motion, then the Court should give Judge Cecchi an opportunity to deny the Motion.  <u>See</u> Reply at 12.  This request does

not demonstrate exceptional circumstances.  There is no indication that the Court deciding the

Motion especially burdens Dr. Cal, nor is there any indication that the District of Jersey's

management of the underlying litigation will be disrupted if the Court declines to transfer the

Motion.  Accordingly, the Court will not transfer the Motion to the District of New Jersey.

**IT IS ORDERED** that: (i) Darling Industries Inc.'s Motion to Enforce Subpoena Served

on Non-Party Dr. Mark P. Cal, filed July 27, 2021 (Doc. 1), is denied; and (ii) the request to quash

the Subpoena in the Plaintiffs' Response to Opposition to Defendant's Motion to Enforce

Subpoena Served on Non-Party Dr. Mark P. Cal and Request to Quash or Transfer Defendant's

Motion to Trial Court at 3, filed August 17, 2021 (Doc. 5), is granted.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Matthew Z. Robb
Liddle & Dubin
Detroit, Michigan

    *Attorneys for the Plaintiffs*

Steven Rossenwasser
Green Traurig, LLP
Atlanta, Georgia

-- and --

Tomas J. Garcia
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendants*